UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------

RAMON LOPEZ,

            Plaintiff,

      -against-

NEW YORK CITY DEPARTMENT OF
CORRECTIONS E.M.T.C. WARDEN PHIPPS,
CAPTAIN LOUDEN, CAPTAIN RAHMAN,
CAPTAIN JAMERSON, CAPTAIN REMY,
C.O. MITCHELL (BADGE 11652),
E.M.T.C. MD ALVES, C.O. JOHN DOE #1,
C.O. JOHN DOE #2, and C.O. JOHN DOE #3,

            Defendants.

------------------------------------------------------------

NOT FOR PUBLICATION

**<u>MEMORANDUM & ORDER</u>**
18-CV-3605 (MKB)

MARGO K. BRODIE, United States District Judge:

      Plaintiff Ramon Lopez, proceeding *pro se*, filed the above-captioned action on June 20,

2018 pursuant to 42 U.S.C. § 1983, against several New York City Department of Corrections

("DOC") employees. (Compl., Docket Entry No. 1.) On September 10, 2018, Plaintiff filed an

Amended Complaint against Defendants DOC Warden Phipps, Captain Louden, Captain

Rahman, Captain Jamerson, Captain Remy, Corrections Officer Mitchell, MD Alves,[1] and

Corrections Officers John Does 1–3, relating to several incidents at the Eric M. Taylor Center

("EMTC"), a New York City detention facility in the Bronx, New York.[2] (Am. Compl., Docket

Entry No. 6.) The Court grants Plaintiff's application to proceed *in forma pauperis* ("IFP") for

---

    [1] Plaintiff does not provide a first name for any of the Defendants named in the
Complaint.

    [2] On July 16, 2018, Plaintiff filed a motion to appoint counsel. (Pl. Mot. to Appoint
Counsel, Docket Entry No. 4.) By Order dated March 26, 2019, the Court denied Plaintiff's
motion without prejudice. (Order dated Mar. 26, 2019, Docket Entry No. 7.)

the purpose of this Memorandum and Order. For the reasons set forth below, the Court dismisses the Complaint but grants Plaintiff leave to file a second amended complaint within thirty (30) days of the date of this Memorandum and Order.

## I. Background

For the purposes of this Memorandum and Order, the Court assumes the truth of the factual allegations in the Amended Complaint.

### a. Mattress and temperature complaints

On March 9, 2018, Plaintiff was a pretrial detainee at the Vernon C. Bain Center ("VCBC") at Rikers Island and was "provided an insufficient and inadequate deflated yoga mat equivalent to about 100–150 sheets of paper" to sleep on. (Am. Compl. ¶ 14.) On March 12, 2018, Plaintiff asked the corrections officer on duty "for extra mattresses or thick blankets because [Plaintiff's] back and sides began to hurt and he could feel the metal foundation forcefully pressing against his body." (*Id.* ¶ 15.)

On March 14, 2018, Defendants transferred Plaintiff to the EMTC at Rikers Island and provided him with a "deflated yoga mat" to sleep on. (*Id.* ¶¶ 16–17.) Plaintiff "requested additional mattresses or thick blankets to place under the deflated yoga mat objectively for support and to alleviate depraved sleep and prevent bodily pains throughout the night." (*Id.* ¶ 17.)

On March 15, 2018, Plaintiff informed two corrections officers that there had been no heat the night before and that a broken window in the bathroom that would not close "contributed to the freezing temperatures inside the dorm." (*Id.* ¶ 18.) Plaintiff filed a grievance related to "the ha[r]sh conditions," and "the misuse of the facility purchase mattresses" and "notif[ied] the administration that [P]laintiff's health is compromised due to sleep deprivation,

neck, back, and hip pains." (*Id.* ¶¶ 18–19.) Plaintiff alleges that the "Bob Barker Corporation . . . notifies and instructs its consumers not to use the mattress (or deflated yoga mat) with a foundation. . . ." (*Id.* ¶ 19.) On March 16 and 19, 2018, Plaintiff signed up for "medical 'sick-call,' but was not seen until Thursday, March 22, 2018," when Dr. Alves prescribed Plaintiff medication to reduce pain and help him sleep. (*Id.* ¶ 20.)

**b. Search of Plaintiff's dormitory and Plaintiff's body cavity search**

On April 6, 2018, Rahman and Louden ordered a search of Plaintiff's dormitory. (*Id.* ¶ 21.) In addition, officers walked Plaintiff to the bathroom where he was given a body cavity search in view of other inmates, which caused him to feel "extremely uncomfortable[,] . . . emotional[ly] distress[ed,] . . . depress[ed], [and] paranoi[d]." (*Id.*) Plaintiff was directed to "bend and spread his cheeks — exposing his anal area." (*Id.*) The officers did not find any contraband. (*Id.*)

Plaintiff alleges that the next day, Jamerson and Remy ordered another dormitory search "without penological interest and without finding any sort of contraband the day before." (*Id.* ¶ 22.) Defendants took Plaintiff to the bathroom where he was directed to remove his clothing. (*Id.*) John Doe #2 "stood by the entrance/exit door and strangely started to whistle making [P]laintiff uncomfortable which affect[ed] him psychologically." (*Id.*) Mitchell "made Plaintiff show his entire body" and allowed other inmates to view plaintiff "while he spread his cheeks." (*Id.*) At the end of the search, Plaintiff's "Puma sneakers" were confiscated by John Doe #3, who also "disheveled" Plaintiff's papers resulting in Plaintiff's inability to find a sneaker pass that was authorized by his doctor on April 4, 2018. (*Id.* ¶ 23.) The officers did not give Plaintiff a voucher for his sneakers at the end of the search and he was therefore unable to retrieve them that day. (*Id.*)

### c. Plaintiff's slip and fall incident and subsequent medical treatment

On April 12, 2018, after taking a shower and getting dressed, Plaintiff "slipped and fell on his head, near the drain area where [three] tiles are missing," and soapy water accumulates. (*Id*. ¶ 24.) Plaintiff's fall caused him to have "severe headache, dizziness, confusion, and back pains." (*Id*.) He waited fifteen minutes to see a doctor and was subsequently carried by two inmates to a stretcher. (*Id*.) Doctors "prescribed Ibu[p]ro[f]en 400MG to be take[n] twice a day." (*Id*.) The next day, Plaintiff "experienced a migraine in the early morning," but the corrections officer on duty refused to see Plaintiff because Dr. Alves "was going to reach out to [Plaintiff] that day." (*Id.* ¶ 25.) Plaintiff was never contacted by anyone and "was left with a headache all day." (*Id*.) At some time thereafter, Plaintiff filed a grievance, due to the failure of the facility to provide shower mats to inmates. (*Id*.)

On April 16, 2018, Plaintiff "went to medical" because he was experiencing "severe back [pain], neck [pain], dizziness, and continuous migraines that derived from the slip and fall." (*Id.* ¶ 27.) Dr. Alves attended to Plaintiff and "advised a concussion test was not warranted because [it is] a normal process when someone falls." (*Id.*) Dr. Alves prescribed more pain medication. (*Id*.)

Plaintiff seeks, *inter alia*, $1,000,000.00 in monetary damages. (*Id.*)

## II. Discussion

### a. Standard of review

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir.

2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. In reviewing a *pro se* complaint, the Court must be mindful that the plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (citation and internal quotation marks omitted); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (same); *see Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that even after *Twombly*, the court "remain[s] obligated to construe a *pro se* complaint liberally"). Nevertheless, the Court is required to dismiss *sua sponte* an *in forma pauperis* action, if the Court determines it "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *see also Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007).

### b. Section 1983 claims

Plaintiff describes a number of conditions that he was subjected to during his pretrial detention, including unlawful searches of his person and cell, denial of adequate bedding, freezing temperatures in his dorm, injuries as a result of a slip-and-fall, inadequate medical care, and deprivation of his personal property.

Under section 1983, individuals may bring a private cause of action against persons "acting under color of state law" to recover money damages for deprivations of their federal or constitutional rights. *Matusick v. Erie Cty. Water Auth.*, 757 F.3d 31, 55 (2d Cir. 2014) (quoting 42 U.S.C. § 1983). To establish a viable section 1983 claim, a plaintiff must show "the violation of a right secured by the Constitution and laws of the United States" and that "the alleged deprivation was committed by a person acting under color of state law." *Vega v. Hempstead*

*Union Free Sch. Dist.*, 801 F.3d 72, 87–88 (2d Cir. 2015) (citations and internal quotation marks omitted). In addition, a plaintiff must show the defendant's personal involvement in the alleged constitutional violation. *See, e.g.*, *Grullon v. City of New York*, 720 F.3d 133, 138 (2d Cir. 2013) (collecting cases).

### i. Dormitory and body cavity search claim

Plaintiff alleges that on April 6, 2018, his dormitory was searched and he was subjected to a body cavity search, during which other inmates "passed in front of plaintiff's stall and impeded upon [his] body and privacy." (Am. Compl. ¶ 21.) Plaintiff also alleges that the following day, April 7, 2018, his dormitory was again searched, "clearly in an attempt to threaten, harass, discourage, and mistreat inmates." (*Id.* ¶ 22.) Further, Plaintiff alleges that also on April 7, he was again subjected to a body cavity search, during which, other inmates were allowed to pass by Plaintiff "while he spread his cheeks." (*Id.*)

The Fourth Amendment requires that searches of prison inmates be "reasonably related to legitimate security interests."[3] *Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 566 U.S. 318, 328 (2012) (quoting *Turner v. Sqfley*, 482 U.S. 78, 89 (1987)); *Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016) (stating that inmates maintain a limited right to bodily privacy under the Fourth Amendment). "If the inmate's Fourth Amendment claim challenges a prison regulation or policy, courts typically analyze the claim under [*Turner*.]" *Harris*, 818 F.3d at 57.

---

[3] Although Plaintiff contends that Defendants violated his constitutional rights under the Eighth Amendment, the Court construes these allegations as seeking to assert a claim under the Fourth Amendment, which prohibits unreasonable searches and seizures. U.S. Const. amend. IV. *See Harris v. Miller*, 818 F.3d 49, 57–58 (2d Cir. 2016) (analyzing the plaintiff's visual body cavity search under the Fourth Amendment); *Sassi v. Dutchess County*, No. 16-CV-1450, 2019 WL 401951, at *13–14 (N.D.N.Y. Jan. 31, 2019) (analyzing the plaintiff's strip search under the Fourth Amendment); *Roundtree v. City of New York*, No. 15-CV-8198, 2018 WL 1586473, at *11 (S.D.N.Y. Mar. 28, 2018) (analyzing the plaintiff's cell search claim under the Fourth Amendment).

"Under *Turner*, 'the regulation is valid if it is reasonably related to legitimate penological interest.'" *Id*. at 57–58 (quoting *Turner*, 482 U.S. at 89). When a plaintiff "challenges an isolated search, courts typically apply the standard set forth in *Bell v. Wolfish*, 441 U.S. 520 (1979)." *Id*. at 58; *see, e.g.*, *Byrd v. Maricopa Cty. Sheriff's Dep't*, 629 F.3d 1135, 1141 n.6 (9th Cir. 2011) (en banc) ("Because [the plaintiff] did not challenge the constitutionality of the Contraband Policy, and because the district court focused on the facts of the actual search conducted rather than on the provisions of the Contraband Policy, we apply the *Bell* factors rather than those articulated in [*Turner*], which addresses inmate challenges to regulations."). In *Bell*, the Supreme Court held that "the test of reasonableness is not capable of precise definition or mechanical application." 441 U.S. at 559. The test requires courts to balance "the need for the particular search against the invasion of personal rights that the search entails." *Id*. In doing so, courts "must consider [1] the scope of the particular intrusion, [2] the manner in which it is conducted, [3] the justification for initiating it, and [4] the place in which it is conducted." *Harris*, 818 F.3d at 58 (quoting *Bell*, 441 U.S. at 559).

To state a Fourth Amendment claim for the infringement of the right to bodily privacy, a plaintiff must show that he had an actual, subjective expectation of bodily privacy, and that officials lacked a sufficient justification to intrude on the plaintiff's expectation of bodily privacy. *Harris*, 818 F.3d at 57. Strip searches do not violate the Fourth Amendment if they are performed pursuant to policies that are "reasonably related to legitimate penological interests." *Florence*, 566 U.S. at 326 (quoting *Turner*, 482 U.S. at 89). However, where "[a] corrections officer's intentional contact . . . serves no penological purpose and is undertaken with the intent to gratify the officer's sexual desire or humiliate the inmate," such a search violates the Fourth Amendment. *Crawford v. Cuomo*, 796 F.3d 252, 257–58 (2d Cir. 2015).

Plaintiff alleges that his privacy was intruded upon when officers required Plaintiff to remove his clothing and inmates were allowed to pass by him during both body cavity searches. Thus, Plaintiff sufficiently alleges a subjective expectation of privacy in both searches. *See Covino*, 967 F.2d at 78 ("[W]e have little doubt that society is prepared to recognize as reasonable the retention of a limited right of bodily privacy even in the prison context.").

However, Plaintiff fails to allege facts suggesting that the searches were unreasonable. Plaintiff alleges that on April 6, 2018, certain officers[4] walked him over to the bathroom stalls where they directed him to take off his clothes one piece at a time. (Am. Compl. ¶ 21.) Plaintiff had to expose his genitalia to the officers during the search. (*Id*.) The next day, officers again escorted Plaintiff to a bathroom stall and directed that he remove his clothing. (*Id*. ¶ 22.) During both searches, no more than three inmates who had just finished being searched were allowed to walk by Plaintiff's stall. (*Id*. ¶¶ 21–22.) Plaintiff's allegations suggest that the inmates were being walked back to their cells at the time officers were conducting a search of Plaintiff.

The law allows Defendants to conduct reasonable cavity searches of the type Plaintiff alleges. *See Crawford*, 796 F.3d at 225 (holding that "prison officials looking for contraband may subject inmates to reasonable strip searches and cavity searches," but that such a search "may not be undertaken maliciously or for the purposes of sexually abusing the inmate"). According to Plaintiff's own allegations, on both dates, other inmates were also subjected to similar searches, suggesting that the searches were routine and random. Plaintiff only alleges in a conclusory manner that the searches were done "clearly in an attempt to threaten, harass, discourage, and mistreat inmates," (Am. Compl. ¶ 22), but he provides no facts

---

[4] Plaintiff does not identify the gender of the officers. *See Harris*, 818 F.3d at 59 (holding that the person who performs the search and the type of search are "independently relevant to considering the scope" of the intrusion under *Bell*).

to suggest that the searches were conducted in an unreasonable manner. Plaintiff therefore fails to state a viable Fourth Amendment claim. *See Thompson v. City of New York*, No. 16-CV-824, 2017 WL 1929552, at *2 (S.D.N.Y. May 9, 2017) ("Plaintiff's argument that there was no 'cause' to strip search him is unavailing because *Florence* permits correction officers to strip search detainees without particularized suspicion."); *Walker v. Ponte*, No. 14-CV-8507, 2016 WL 4411415, at *4 (S.D.N.Y. Aug. 18, 2016) ("That the strip searches were carried out in front of cameras and other inmates does not counter [the legitimate security interest of discovering contraband].") (citations omitted); *Rebenstorf v. City of New York*, No. 15-CV-5784, 2015 WL 6438765, at *3 (E.D.N.Y. Oct. 21, 2015) (dismissing plaintiff's visual body cavity search claim for failing to state a claim under the Fourth Amendment because plaintiff failed to make any allegations that the search, which took place in front of other inmates and officers, was any different from "a routine, random strip search of inmates"); *Smith v. City of New York*, No. 14-CV-5934, 2015 WL 3929621, at *2 (S.D.N.Y. June 17, 2015) (recognizing that "neither the presence of cameras nor the presence of other inmates and employees of a correctional facility makes an otherwise constitutional strip search unconstitutional"); *Israel v. City of New York*, No. 11-CV-7726, 2012 WL 4762082, at *3 (S.D.N.Y. Oct. 5, 2012) ("The presence of other inmates and officers, males and females, does not alter [the] determination [that the searches were reasonably related to legitimate security interests]."); *Castro-Sanchez v. N.Y. State Dep't of Corr. Servs.*, No. 10-CV-8314, 2011 WL 6057837, at *9 (S.D.N.Y. Dec. 6, 2011) ("Routine random strip searches of inmates, including body cavity inspections, do not violate the Fourth Amendment.").

The Court therefore dismisses this claim without prejudice.[5]

## ii. Unconstitutional condition of confinement claims

The Due Process Clause of the Fourteenth Amendment governs a pretrial detainee's claim of unconstitutional conditions of confinement. *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). In contrast to a convicted prisoner, "'[p]retrial detainees have not been convicted of a crime and thus 'may not be punished in any manner — neither cruelly and unusually nor otherwise.'" *Id.* (alteration in original) (quoting *Iqbal v. Hasty*, 490 F.3d 143, 168 (2d Cir. 2007)).

To prevail on a claim for unconstitutional conditions of confinement, a plaintiff must satisfy a two-prong test. *Darnell*, 849 F.3d at 33 n.9; *see also Valdiviezo v. Boyer*, 752 F. App'x 29, 32 (2d Cir. 2018) ("A pretrial detainee must satisfy two prongs to prove a deliberate-indifference claim."). The first prong, the "objective prong," requires a "showing that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process." *Darnell*, 849 F.3d at 29. The second prong, the "subjective prong," requires a

---

[5] Construing Plaintiff's allegations to allege a claim for the searches of his cell, the claim fails because, based on his allegations, the search of his cell is not subject to constitutional challenge. The Supreme Court has held that "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell" because "[t]he recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions." *Hudson v. Palmer*, 468 U.S. 517, 526 (1984). "[P]rison officials are presumed to do their best to evaluate and monitor objectively the security needs of the institution and the inmates in their custody, and then to determine whether and when such concerns necessitate a search of a prison cell." *United States v. Cohen*, 796 F.2d 20, 23 (2d Cir. 1986) (emphasis omitted). Thus, when a prison official searches a pretrial detainee's cell, the search is not "subject to constitutional challenge, regardless of whether security needs could justify it." *Id.* at 24; *see also Ross v. Aramark Corp.*, No. 18-CV-2246, 2019 WL 1172382, at *6 (S.D.N.Y. Mar. 13, 2019) (dismissing the plaintiff's Fourth Amendment claim on the ground that a prison official initiated the search); *Corley v. City of New York*, No. 14-CV-3202, 2017 WL 4357662, at *15 (S.D.N.Y. Sept. 28, 2017) (dismissing the plaintiff's cell search claim because, "even if [the plaintiff] maintained a privacy right in this cell, he has not stated a claim that the thirty cell searches were unreasonable").

showing that the defendant "acted with at least deliberate indifference to the challenged conditions." *Id*. at 30.

To establish the objective prong, "the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health, which includes the risk of serious damage to 'physical and mental soundness.'" *Id*. (citing *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013), and quoting *LaReau v. MacDougall*, 473 F.2d 974, 978 (2d Cir. 1972)); *see also Valdiviezo*, 752 F. App'x at 32 ("For Fourteenth Amendment claims, this [c]ourt applies the same standard as the Eighth Amendment to determine whether an alleged action is objectively serious enough to be a constitutional violation."); *McMillian v. County of Onondaga*, 710 F. App'x 458, 460 (2d Cir. 2017) (dismissing the plaintiff's conditions of confinement claim where the plaintiff failed to present evidence that "the suicide prevention program posed an excessive risk to his health and safety").

"[P]rison officials violate the Constitution when they deprive an inmate of his basic human needs such as food, clothing, medical care, and safe and sanitary living conditions." *Walker*, 717 F.3d at 125 (internal quotation marks omitted). Moreover, "conditions of confinement may be aggregated to rise to the level of a constitutional violation, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise." *Id*. (citation and internal quotation marks omitted) (holding that allegations that "for approximately twenty-eight months, [the plaintiff] was confined in a cell with five other men, with inadequate space and ventilation, stifling heat in the summer and freezing cold in the winter, unsanitary conditions, including urine and feces splattered on the floor, insufficient cleaning supplies, a mattress too narrow for him to lie on flat, and noisy, crowded conditions that made sleep difficult and placed him at constant risk of

11

violence and serious harm from cellmates" satisfied the objective element).

To satisfy the subjective prong, an inmate must allege that "the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35; *McMillian*, 710 F. App'x at 460 (same). "Under the Fourteenth Amendment, the defendant's state of mind is evaluated objectively." *Valdiviezo*, 752 F. App'x at 33; *Harris v. City of New York*, No. 16-CV-1214, 2018 WL 4471631, at *8 (E.D.N.Y. Sept. 18, 2018) (same).

### 1. Denial of mattress accommodation

Plaintiff alleges that mattresses provided by DOC deprived him of "normal sleep" and posed a risk to his health and safety, and, although he requested a different mattress, his request was denied. (Am. Compl. ¶ 34.)

"[T]he condition of a prisoner's mattress may be so inadequate as to" give rise to a constitutional violation. *Walker*, 717 F.3d at 127; *see also Ruiz v. City of New York*, Nos. 16-CV-6073, 16-CV-6074, 2018 WL 3966295, at *3 (E.D.N.Y. Aug. 17, 2018) (same). "In order to state an unconstitutional conditions of confinement claim based on inadequate bedding, a plaintiff must plead '(1) he had a medical condition requiring a non-standard bed to protect against serious damage to his future health; (2) he made his condition known to the prison officials; (3) he requested a non-standard bed to accommodate the condition; and (4) his request was denied by an official who knew of and disregarded an excessive risk to the plaintiff's health or safety.'" *Ruiz*, 2018 WL 3966295, at *3 (quoting *Rodriguez v. City of New York*, No. 15-CV-7945, 2018 WL 1276826, at *4 (S.D.N.Y. Mar. 4, 2018)); s*ee also White v. Schriro*, No. 16-CV-

6769, 2017 WL 3268202, at *3 (S.D.N.Y. July 31, 2017) ("Simply alleging that a mattress is uncomfortable is insufficient to 'show that the conditions . . . pose an unreasonable risk of serious damage to [the inmate's] health.'" (quoting *Walker*, 717 F.3d at 126)), *report and recommendation adopted*, 2018 WL 1384506 (S.D.N.Y. Mar. 16, 2018).

To plausibly allege an unconstitutional deprivation, a plaintiff must provide factual allegations connecting the plaintiff's serious injuries to the alleged unconstitutional act. *See Daly*, 2017 WL 2364360, at *3 (dismissing the plaintiff's conditions of confinement claim as to his mattress because he failed to allege "any facts that plausibly link the exacerbation of his ailments to the supposed misuse of the mattress"). Courts in this Circuit have found that "[t]he mattresses in current use at Rikers Island do not in and of themselves offend the Constitution." *Rivera v. Doe*, No. 16-CV-8809, 2018 WL 1449538, at *9 (S.D.N.Y. Feb. 26, 2018), *report and recommendation adopted*, 2018 WL 1441386 (S.D.N.Y. Mar. 22, 2018); *see also White*, 2017 WL 3268202, at *3 ("To the extent that the plaintiff argues . . . that the Bob Barker mattress is uncomfortable and is not to be used with a foundation, these claims [ ] fail to establish the objective prong.").

Plaintiff fails to allege that the denial of his request for a different mattress is "sufficiently serious that he was denied the minimal civilized measure of life's necessities[.]" *Walker*, 717 F.3d at 125. Plaintiff alleges that the mattress provided deprived him of "reasonable sleep" and caused his "back and sides" to "hurt," (Am. Compl. ¶¶ 15, 18–19), but fails to plausibly allege how the mattress caused his pain, and why a "special mattress" would alleviate his conditions. In addition, Plaintiff fails to allege that he had a previous medical condition which requires a special bed or that he made any such medical condition known to prison officials. Plaintiff therefore fails to state a conditions of confinement claim regarding his

mattress. *See Daly v. New York City*, No. 16-CV-6521, 2017 WL 2364360, at *3 (S.D.N.Y. May 30, 2017) (dismissing the plaintiff's conditions of confinement claim for failure to state a claim where the plaintiff suffered from "spinal stenosis as well as crushed vertebrae" and alleged that the mattress "causes medical issues and induces severe pain" because the plaintiff failed to link ailments to the inadequacy of the mattress); *Nelson v. New York City*, No. 16-CV-6354, 2017 WL 2983885, at *1–2 (S.D.N.Y. July 12, 2017) (dismissing the plaintiff's conditions of confinement claim where the plaintiff failed to establish a "plausible link" between his severe back pain and sleep deprivation and his thin mattress); *Knight v. Municipal Corp.*, No. 14-CV-3783, 2016 WL 4030632, at *7 (S.D.N.Y. July 26, 2016) ("The plaintiff's conclusory assertions that he suffered 'serious pain' as a result of uncomfortable mattresses fall short of the minimum pleading requirements . . . ." (citation omitted)).

In addition, Plaintiff's allegations as to the purported use of the mattress and Bob Parker's instructions "not to use the mattress . . . with a foundation" fails to state a claim. *See Youmans v. Schriro*, No. 12-CV-3690, 2013 WL 6284422, at *2 (S.D.N.Y. Dec. 3, 2013) ("[T]he warning on the mattress — to the effect that the mattress is to be used without a foundation — relates to fire safety, not to chiropractic health.").

The Court therefore dismisses Plaintiff's section 1983 claim as to the denial of mattress accommodation.

## 2.  Temperature in cell

Plaintiff alleges that on the night of March 15, 2018, "there was no heat all night and the dorm felt like an ice box" and that "there was a broken window in the bathroom by the entrance that did not close and further contributed to the freezing temperatures inside the dorm." (Am. Compl. ¶18.)

The Second Circuit and other courts in this Circuit have held that excessively hot or cold temperature may give rise to a constitutional violation. *See Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001) ("We have held that an Eighth Amendment claim may be established by proof that the inmate was subjected for a prolonged period to bitter cold."); *see also Hathaway v. U.S. Att'y Gen.*, 491 F. App'x 207, 208 (2d Cir. 2012) ("We also believe that [the plaintiff's] allegation that federal officials punished him for assaulting a prison warden by causing him to be transferred to a small cell in a state prison, in which the temperature exceeded 110 degrees, for such a significant length of time constitutes a plausible claim that the officials violated his right under" the Eighth Amendment); *Corselli v. Coughlin*, 842 F.2d 23, 27 (2d Cir. 1988) (exposure to "bitterly cold" and subfreezing temperatures for three months may constitute cruel and unusual punishment); *Wingate v. Robert N. Davoren Center*, No. 12-CV-5521, 2013 WL 4856573, at *3 (S.D.N.Y. Sept. 10, 2013) ("Many courts, including the Second Circuit, have held excessively hot or cold conditions may be a constitutional violation." (citing *Gaston*, 249 F.3d at 164)); *Stevens v. City of New York*, No. 10-CV-5455, 2011 WL 3251501, at *3 (S.D.N.Y. July 22, 2011) ("Exposure to freezing temperatures may constitute a Fourteenth Amendment violation."); *cf. Collins v. Fischer*, No. 15-CV-103, 2018 WL 1626528, at *7 (S.D.N.Y. Mar. 30, 2018) ("District courts in the Second Circuit have also found allegations of exposure to uncomfortable temperatures for short periods of time insufficient to state an Eighth Amendment claim.").

The Second Circuit recently noted that there is no "bright-line durational or severity threshold" required to establish a constitutional violation. *Darnell*, 849 F.3d at 32; *see also id*. at 31 ("[T]his [c]ourt has been reluctant to impose bright-line durational or severity limits in conditions of confinement cases."). "While the proper inquiry for a conditions of confinement

15

claim is by reference to the duration and severity of the conditions, the claim d[oes] not require a 'minimum duration' or 'minimum severity' to reach the level of a constitutional violation." *Id*. at 21.

Based on the allegations in the Amended Complaint, the Court finds that Plaintiff fails to plausibly allege an objectively serious deprivation that rises to the level of a constitutional violation. Plaintiff alleges that on a particular evening, he experienced freezing temperatures,[6] (Am. Compl. ¶ 18), but does not plead the length of his confinement under these conditions or how these conditions affected his health. Although the Court does not base its finding solely on the duration of the alleged conditions, the Court recognizes that several district courts in the Second Circuit have found allegations of exposure to freezing temperatures for shorts periods of time to be insufficient to allege a constitutional violation. *See Collins*, 2018 WL 1626528, at *7 (finding the plaintiff's allegations that it was "very cold in the cell . . . during the four to five approximately three-day periods he was housed in the tank" insufficient to state an objectively serious deprivation that rises to the level of a constitution violation); *Stevens*, 2011 WL 3251501, at *3–4 & n.2 (finding pretrial detainee's allegations that he was housed in a cell with a broken window covered by a garbage bag during cold weather for as many as four days was insufficient to plead a constitutional violation). Without more, Plaintiff fails to state a claim for the alleged exposure to cold temperatures. *See Santana v. City of New York*, No. 15-CV-6715, 2018 WL 1633563, at *8 (S.D.N.Y. Mar. 29, 2018) (dismissing the plaintiff's claim as to extreme temperatures because he did not offer "any details to substantiate the extent of the alleged

---

[6] Plaintiff also filed a grievance in which he states that there is "no heat in [the] lower housing unit." (Inmate Grievance and Request Program Statement Form, annexed to Am. Compl. as Ex. A, Docket Entry No. 6.)

confinement in extreme temperatures" and therefore did not satisfy the objective component of his constitutional claim).

The Court dismisses Plaintiff's claim as to the extreme temperatures in his cell.

### 3. Slip and fall claim

Plaintiff alleges unconstitutional conditions of confinement "due to [D]efendant's negligence" in failing to place shower mats in the shower area. (Am. Compl. ¶ 35.) Plaintiff contends that Defendants' negligence constitutes a "failure" to maintain "a 'prison safe' environment." (*Id.*)

Several courts have held that allegations of wet floor conditions that cause a prisoner to slip and fall, standing alone, do not satisfy the first prong of a conditions of confinement claim. *See Strange v. Westchester Cty. Dep't of Corr.*, No. 17-CV-9968, 2018 WL 3910829, at *1, 3 (S.D.N.Y. Aug. 14, 2018) (finding the plaintiff's allegations that "he slipped and got hurt while exiting the shower inside his cell" because the shower area did not have "a shower mat to protect him from slipping" insufficient to establish a conditions of confinement claim); *Hawkins v. Nassau Cty. Corr. Facility*, 781 F. Supp. 2d 107, 113 (E.D.N.Y. 2011) ("[T]he alleged water in the shower area does not deprive plaintiff of a basic human need and, thus, cannot as a matter of law give rise to a constitutional violation that can be brought under [s]ection 1983."); *Flowers v. City of New York*, 668 F. Supp. 2d 574, 578–79 (S.D.N.Y. 2009) ("Any claim against the City for the slip and fall that resulted in plaintiff's ankle injury — a garden variety tort — is not cognizable under [s]ection 1983 and must be litigated in state court" (citing *Young v. County of Fulton*, 160 F.3d 899, 902 (2d Cir. 1998))); *Edwards v. City of New York*, No. 08-CV-5787, 2009 WL 2596595, at *3 (S.D.N.Y. Aug. 24, 2009) ("[C]ourts have held that allegations of wet conditions leading to a slip-and-fall will not support a [s]ection 1983 claim even where, as here,

the plaintiff also alleges that the individual defendants had notice of the wet condition but failed to address it.").

Moreover, Plaintiff's allegations fail to satisfy the second prong of a conditions of confinement claim because the allegations do not show that the officers "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed" to Plaintiff, or that the officers "knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35; *see Washington v. Artus*, 708 F. App'x 705, 708 (2d Cir. 2017) (rejecting conditions of confinement claim because "even if [the plaintiff] could demonstrate that the defendants were generally aware of the slippery condition of the mess hall floor" the "claim sounds at most in negligence, not deliberate indifference"); *Bacon v. Carroll*, 232 F. App'x 158, 160 (3d Cir. 2007) (finding that "[a]lthough a wet floor may pose a substantial risk, [the plaintiff's] allegations do not reflect the deliberate indifference required to impose liability under the Eighth Amendment" and because the "claim amounts merely to negligence," it is not actionable under section 1983); *Seymore v. Dep't of Corr. Servs.*, No. 11-CV-2254, 2014 WL 641428, at *4 (S.D.N.Y. Feb. 18, 2014) (finding that the plaintiff's allegations concerning a slip-and-fall caused by unsafe conditions constitute "ordinary torts that do not rise to the level of constitutional deprivations"); *Martin v. City of New York*, No. 11-CV-600, 2012 WL 1392648, at *9 (S.D.N.Y. Apr. 20, 2012) ("[B]odily injuries sustained from a slip-and-fall on a wet floor simply do not rise to the level of a constitutional violation.").

Plaintiff's own allegations demonstrates that his slip and fall claim sounds, at best, in negligence.  (*See* Am. Compl. ¶ 35 ("[T]he administration inadequately placed [four] extremely small residential shower mats that did not address the safety condition for all [eight] showers in

the area," which "grossly highlights negligence due to the failure in maintaining a prison safe environment."). Thus, Plaintiff's claim that his slip and fall on a wet floor in the bathroom area violated his constitutional rights fails to state a claim on which relief may be granted.

### iii. Claim of inadequate medical care

Plaintiff seeks to bring a claim for the allegedly inadequate medical care he received at Rikers Island after the slip and fall. (*Id.* ¶ 37.) Plaintiff alleges that he sought medical attention after the slip and fall "because of constant headaches, neck and back pain," but was only "prescribed muscle relaxers and pain medication" and was "refused . . . a head protocol assessment." (*Id.*)

To state a claim of inadequate medical treatment, a plaintiff must sufficiently allege (1) that he had an objectively "serious medical condition," and (2) that this condition was met with subjective "deliberate indifference" on the part of prison officials. *Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2000). "In order to meet the objective prong for a claim of deliberate indifference to serious medical needs, the plaintiff must show that he actually did not receive adequate care and that the inadequacy in medical care was sufficiently serious." *Valdiviezo*, 752 F. App'x at 32 (citing *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006)); *Johnson v. Wright*, 412 F.3d 398, 403 (2d Cir. 2005) (holding that in order to satisfy the objective element, a plaintiff must establish a serious medical condition by showing "that his medical need was 'a condition of urgency, one that may produce death, degeneration, or extreme pain'" (quoting *Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir. 1998))). "Factors relevant to the seriousness of a medical condition include whether 'a reasonable doctor or patient would find important and worthy of comment,' whether the condition 'significantly affects an individual's daily activities,' and whether it causes 'chronic and substantial pain.'" *Salahuddin*, 467 F.3d at 280

(quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

Plaintiff fails to plead an objectively serious injury. Plaintiff's injuries of "constant headaches, neck and back pains" are not "sufficiently serious" to show that he had an objectively serious medical condition. *See Leneau v. City of New York*, No. 16-CV-0893, 2018 WL 583120, at *7 (S.D.N.Y. Jan. 26, 2018) (finding that "headaches, even serious ones coupled with other symptoms, rarely rise to the level of a sufficiently serious injury"); *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 310–11 (S.D.N.Y. 2001) (finding that "[a] bleeding finger does not pose a substantial risk of serious harm" and noting that even a broken finger fails to satisfy the objective prong).

Nor has Plaintiff alleged that his condition was met with subjective deliberate indifference. Plaintiff admits that he was treated with painkillers. (Am. Compl. ¶ 10.) Although Plaintiff alleges that he should have been treated with more than just pain killers and that he should have been given a "concussion test," (*id.*), Plaintiff fails to allege that a concussion test was medically necessary, *see Sonds*, 151 F. Supp. 2d at 312 ("[D]isagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention, are not adequate grounds for a [s]ection 1983 claim." (citing *Estelle v. Gamble*, 429 U.S. 97, 107 (1976))).

Moreover, Plaintiff's disagreement with the manner in which his condition was treated and his belief that he should have received more or different treatment is not, without more, sufficient to state a constitutional claim. *See McIntosh v. City of New York*, 722 F. App'x 42, 46 (2d Cir. 2018) ("To the extent that [the plaintiff] believes that she received inadequate treatment, 'mere disagreement over the proper treatment does not create a constitutional claim.'" (quoting *Chance*, 143 F.3d at 703); *Williams v. Wright*, 162 F. App'x 69, 71 (2d Cir. 2006) ("The law is

well established that a 'prisoner's right is to medical care — not the type or scope of medical care which he personally desires.'" (quoting *United States ex rel. Hyde v. McGinnis*, 429 F. 2d 864, 867–68 (2d Cir. 1970))); *see also Alston v. Bendheim*, 672 F. Supp. 2d 378, 385 (S.D.N.Y. 2009) ("An inmate's disagreement with his treatment or a difference of opinion over the type or course of treatment [does] not support a claim of cruel and unusual punishment.").

Plaintiff therefore fails to state a claim for inadequate medical care and the Court dismisses this claim.

### iv.   Due process claim as to Plaintiff's sneakers

Plaintiff alleges that his "Puma sneakers were arbitrarily confiscated . . . despite [P]laintiff having an authorized sneaker pass" in violation of his rights to due process.  (Am. Compl. ¶ 41.)  In addition, Plaintiff alleges that his doctor authorized him to use the sneakers but that he could not find the sneaker pass during the search.  (*Id*. ¶ 23.)  As a result of having to wear jail-issued footwear, Plaintiff alleges that he did not receive "standard treatment" from Defendants and suffered physical harm.  (*Id.* ¶ 41.)

### 1.   Deprivation of property

Although it is unclear whether Plaintiff's sneakers were returned to him, to the extent Plaintiff seeks to bring a deprivation of property claim in relation to the confiscation of his sneakers, the claim fails.

"A prisoner's due process rights are not violated by the unauthorized destruction or damage of property by the state, if 'the state makes available a meaningful postdeprivation remedy.'"  *Riddick v. Simple*, 731 F. App'x 11, 13 (2d Cir. 2018) (quoting *Hudson v. Palmer*, 468 U.S. 517, 531 (1984)); *see also Omor v. City of New York*, 13-CV-2439, 2015 WL 857587, at *8 (S.D.N.Y. Feb. 27, 2015) (finding that deprivation of personal property claims are "barred

where the state provides a meaningful postdeprivation remedy under state law" (citing *Hudson*, 468 U.S. at 533 ("[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available."))). "New York provides an adequate post-deprivation remedy in the Court of Claims with respect to property claims by prison inmates." *Jimenez v. Goord*, 205 F.3d 1323, 1323 (2d Cir. 1999); *Toliver v. City of New York*, No. 10-CV-5806, 2013 WL 6476791, at *7 (S.D.N.Y. Dec. 10, 2013) ("New York provides inmates with the opportunity for a meaningful post deprivation hearing through state law causes of action for 'negligence, replevin, or conversion which could fully compensate the plaintiff for his alleged property loss.'" (quoting *Cook v. City of New York*, 607 F. Supp. 702, 704 (S.D.N.Y. 1985))).

Plaintiff does not allege that he sought to bring, or was prevented from bringing, a state law cause of action seeking compensation for the loss of his sneakers. Plaintiff's constitutional claim arising from any alleged deprivation of personal property is not cognizable because New York law provides an adequate post-deprivation remedy. *See Jimenez*, 205 F.3d at 1323 (affirming the district court's judgment dismissing the plaintiff's claim for loss of personal property because New York law provides for post-deprivation remedies); *Ross v. Aramark Corp.*, No. 18-CV-2246, 2019 WL 1172383, at *6 (S.D.N.Y. Mar. 13, 2019) (dismissing the pretrial detainee's claim for deprivation of property because New York State provides for an adequate, post-deprivation remedy); *Graham v. NYC Dep't of Corr. Svc.*, No. 18-CV-922, 2018 WL 2121593, at *2–3 (E.D.N.Y. May 8, 2018) (dismissing the plaintiff's deprivation of property claim where the plaintiff alleged that officers confiscated his personal clothing because "New

York law provides an adequate post-deprivation remedy, and plaintiff has not stated a due process claim for the loss of his personal items").

## 2. Deliberate indifference

To the extent Plaintiff is attempting to assert a claim for deliberate indifference to his medical needs, he fails to do so. Although Plaintiff alleges that he had a doctor's note for special sneakers,[7] he does not allege any pain suffered as a result of wearing the jail-issued sneakers or the length of time he had to wear jail-issued sneakers. Nor does Plaintiff allege any injuries resulting from the jail-issued sneakers. Plaintiff therefore has not alleged a sufficiently serious injury. *See Foreman v. Martin*, 11-CV-4584, 2012 WL 607665, at *2 (E.D.N.Y. Feb, 24, 2012) (dismissing claim that the plaintiff was not allowed to wear sneakers of his choice); *Williams v. Dept. of Corr.*, 11-CV-1515, 2011 WL 3962596, at *4 (S.D.N.Y. Sept. 7, 2011) (dismissing claim that the plaintiff was forced to wear poorly constructed prison-issued footwear resulting in slip-and-falls and extreme leg and foot pain); *Edwards v. Quinones*, No. 10-CV-3141, 2010 WL 4669110, at *3 (S.D.N.Y. Nov. 17, 2010) (dismissing claim that the plaintiff was provided with inadequate sneakers as "border[ing] on the patently frivolous"); *Brown v. DeFrank*, No. 06-CV-235, 2006 WL 3313821, at *21 (S.D.N.Y. Nov. 15, 2006) (finding pain from foot condition not sufficiently serious) (collecting cases).

### c. Leave to amend

In light of Plaintiff's *pro se* status, the Court grants Plaintiff leave to file a second

---

[7] Plaintiff does not allege that the officers were aware of a doctor's order that he should not wear the prison-issued footwear and ignored the order. *See Johnson v. Wright*, 412 F.3d 398, 404 (2d Cir. 2005) ("[A] deliberate indifference claim can lie where prison officials deliberately ignore the medical recommendations of a prisoner's treating physicians"); *Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987) ("Prison officials are more than merely negligent if they deliberately defy the express instructions of a prisoner's doctors.").

amended complaint within thirty (30) days of this Memorandum and Order.  Should Plaintiff elect to file a second amended complaint, he must plead sufficient facts to allege a violation of his constitutional rights.  The second amended complaint must comply with Rule 8(a) of the Federal Rules of Civil Procedure as it must "plead enough facts to state a claim to relief that is plausible on its face," *Twombly,* 550 U.S. at 570, and it must identify defendants who personally violated his constitutional rights while acting under color of state law.  Plaintiff must identify the defendants in both the caption and the body of the second amended complaint and provide the dates and locations for each relevant event.  Even if Plaintiff does not know the name of the individual, he may identify the individual as John or Jane Doe, along with descriptive information and place of employment.

Plaintiff is advised that the second amended complaint will completely replace the Amended Complaint, must be captioned "Second Amended Complaint," and shall bear the same docket number as this Memorandum and Order.

### III.  Conclusion

For the foregoing reasons, the Court finds that the Amended Complaint fails to state a claim upon which relief may be granted.  28 U.S.C. § 1915(e)(2)(B)(ii).  The Court grants Plaintiff thirty (30) days from the date of this Memorandum and Order to file a second amended complaint.  No summons shall issue at this time, and all further proceedings shall be stayed for thirty (30) days.  The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal.  *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

Dated: June 17, 2019
      Brooklyn, New York

SO ORDERED:

_____s/ MKB_____
MARGO K. BRODIE
United States District Judge